UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORI DIAZ PIOTTER,
          Plaintiff

    v.

                                   Case No. 6:21-cv-6533

MANUFACTURERS AND TRADERS TRUST
COMPANY,
          Defendant

---

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

**DICKINSON & SILVERMAN, PLLC**
*Attorneys for Plaintiff Lori Diaz Piotter*

Date:   April 1, 2022           By:    */s/ Gregory L. Silverman*
                                      Gregory L. Silverman, Esq.
                                      118 Genesee St.
                                      Geneva, NY  14456
                                      Tel: 585-648-0246
                                      gsilverman@dickinsonsilverman.com

                                      ORAL ARGUMENT REQUESTED

Plaintiff Lori Diaz Piotter respectfully submits this Memorandum of Law in opposition to Defendant Manufacturers and Traders Trust Company's ("M&T" or the "Bank") Motion to Dismiss Plaintiff's First Amended Complaint.

## PRELIMINARY STATEMENT

Piotter is unambiguously an "applicant" under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"). The Bank's argument for dismissal is not grounded on the statutory definition of "applicant." Rather it solely relies on caselaw where a plaintiff sought ECOA protection unrelated to any proactive request for credit. The facts are distinct here.

The ECOA's statutory definition of "applicant" expressly includes credit requests under an "existing credit plan." Piotter's claims are grounded on her requests that the Bank extend her credit pursuant to the terms of her existing line of credit ("LOC" or "credit plan"), the Bank's denial of those requests, and its revocation of that credit plan.

Even if the statutory definition does not precisely answer whether Piotter's requests for credit under an existing credit plan renders her an "applicant," any uncertainty is dispelled by the ECOA's regulations. The regulatory definition of "applicant" includes those who have both requested and received credit. This plainly includes Piotter.

The Bank's strained interpretation of "applicant" would illogically prohibit credit discrimination only when a credit plan is agreed upon, and then allow subsequent discrimination when a person seeks credit under that existing plan. The ECOA's protections against credit discrimination do not disappear the moment an existing credit plan is conceived. Piotter's ECOA claims are underpinned by her new requests for credit under her existing LOC. She is an "applicant" as defined by both the ECOA, its regulations, and the decision in this District on which the Bank bases its argument. The Bank's Motion to Dismiss should be denied.

## STANDARD OF REVIEW

At the motion to dismiss stage, only facts contained in the complaint or incorporated by reference will be considered, and all alleged facts are construed in a light most favorable to Plaintiff. *Faulkner v. Beer*, 463 F.3d 130 (2nd Cir. 2006). A motion to dismiss must be defeated when the plaintiff alleges facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Instead of citing Piotter's First Amended Complaint directly, the Bank "summarizes" the alleged facts in a declaration in support of the Bank's motion to dismiss. *See* Decl. of Julia Hilliker dated March 4, 2022, ¶ 4 (Doc. No. 25-1). But the declaration injects new facts and unfavorably interprets Piotter's allegations. *See id* ¶ 5 (an "overdraft" LOC appears nowhere in the Complaint); ¶ 11 (Piotter *does* allege that she applied for, in the declarant's verbiage, a "new extension for additional credit" under her existing credit plan). Accordingly, the declaration is irrelevant at this stage and should be disregarded. *See Faulker*, 463 F.3d at 134 (besides a limited list of exceptions, inapplicable here, "consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."); *see also* L.R.Civ.P. 7(a)(3).

## FACTUAL BACKGROUND

Piotter maintained a LOC with the Bank, which had a borrowing limit of $9,000. First Am. Compl. ¶¶ 1-2 (Doc. No. 22).[1] On March 17, 2021, Piotter requested credit from her LOC for purposes of facilitating a wire transfer. ¶ 6. Upon request for identification, Piotter provided the Bank's manager her U.S. Army Military Identification (the "Military ID") and explained she had mistakenly forgot her driver's license. ¶ 7. The manager informed Piotter he would need to take her Military ID to another location for verification. ¶ 8. Piotter informed him that she

---

[1] All paragraph symbols in this section refer to Plaintiff's First Amended Complaint.

needed to leave soon to return to work ¶ 8. When the manager did not return for some time, Piotter departed the bank without her Military ID so she could timely return to work. ¶ 9.

Piotter returned to the Bank the next day to retrieve her Military ID and finalize her request to borrow money from her LOC to facilitate the wire transfer. ¶¶ 10-11. Upon returning, another Bank employee accused Piotter of "bolting" out the previous day and depositing "suspicious" checks. ¶ 22. Piotter explained that she had a limited amount of time due to her work, and that the checks, related to her work, had already cleared. ¶ 23. When renewing her request to borrow money from her LOC to facilitate a wire transfer, Piotter presented the manager with a copy of the invoice she intended to pay and explained that it was the same company in India to which she successfully wired money two months prior. ¶¶ 24-25. The manager denied Piotter's wire transfer request at that time. ¶ 26. Piotter then requested to borrow money from her LOC with no related wire transfer; this request was also denied. ¶ 27.

Later that same day, the manager emailed Piotter to request the invoice which provided the basis for withdrawing money from her LOC to facilitate a wire transfer. ¶ 30. Piotter emailed the invoice, and stated that she would return the next day to borrow money from her LOC to complete her requested wire transfer. ¶ 31.

When Piotter returned to the Bank on March 19, she was interrogated by Bank employees about her military career, her company CommandTec, and the checks she deposited (which had already cleared). ¶¶ 23, 34. Piotter eventually responded that she did not feel she needed to answer such detailed personal information to use her LOC, which she always paid back and had recently used to facilitate a similar wire transfer without incident. ¶ 35. A Bank employee then aggressively and repeatedly asked Piotter "was that a threat?" *Id.*

Piotter then went to a teller to request credit from her LOC with no corresponding wire transfer. ¶ 37. The Bank denied this request. ¶ 38. Piotter then went to the ESL Federal Credit Union (ESL) where she successfully opened a line of credit, from which she borrowed money to facilitate the wire transfer she unsuccessfully attempted to complete with the Bank. ¶ 39. A few weeks later, Piotter received notice that the Bank had canceled her LOC, causing her credit score to decrease. ¶¶ 40-41. This action followed.

**LEGAL ARGUMENT**

I.   **THE ECOA AND REGULATION B EXPRESSLY PROTECT THOSE REQUESTING CREDIT UNDER AN EXISTING CREDIT PLAN FROM DISCRIMINATION**

    A.   **Piotter's Requests for Credit Rendered Her an "Applicant" Under the ECOA.**

        1.   **The purpose of ECOA.**

The Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*, is a civil rights law that protects individuals and businesses against discrimination in accessing credit. The ECOA was first passed to "eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit," *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). Overall, "[t]he animating principle of the ECOA...is to prevent discrimination against those applying for credit." *Capitol Indemnity Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002). Accordingly, the ECOA makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction," on the basis of race, sex, color, and other designated characteristics. 15 U.S.C. § 1691(a)(1). To establish a prima facie case under ECOA, "a plaintiff must show that (1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for

the credit; and (4) despite qualification, plaintiff was denied credit." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir. 2010).

### 2.  The ECOA defines an "applicant" as one who "requests" credit.

The ECOA defines an "applicant" as:

> any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit.

15 U.S.C. § 1691a(b).

While the word "applies" is undefined in the ECOA, other courts of appeals have consistently defined it as a <u>request</u>: "the ordinary meaning of the term 'applicant' is one who requests credit to benefit himself." *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1190–91 (11th Cir. 2019) ("English-language dictionaries both before and after the enactment define the term 'apply' to refer to a request for something."); *see also Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir. 2014) ("the plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit."); *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp.*, 754 F.3d 380 (6th Cir. 2014) (same); *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 707 (5th Cir. 2017) (same).

The decision in this District on which the Bank's Motion rests, *Tewinkle v. Capital One, N.A.*, has similarly interpreted that the statutory definition of applicant "calls for [a] plaintiff to *seek* credit (a new *request*, an extension of existing or additional credit or resisting termination of credit)." 2019 WL 8918731, at *5 (W.D.N.Y. Dec. 11, 2019) (Scott, J.) *report and recommendation adopted*, 2020 WL 2812519 (W.D.N.Y. May 29, 2020) (emphasis added).

In turn, credit is defined as: "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer

payment therefor." 15 U.S.C. § 1691e(d). "The hallmark of 'credit' under the ECOA is the right of a party to make deferred payment." *Riethman v. Berry*, 287 F.3d 274, 277 (3rd Cir. 2002).

### 3.   Piotter's requests for credit unambiguously rendered her an "applicant" under the statutory definition, 15 U.S.C. § 1691a(b).

Piotter is an "applicant" under 15 U.S.C. § 1691a(b) because she made two discrete requests for credit pursuant to her LOC. First Am. Compl. ¶¶ 27, 37-38. The type of credit she sought was not a mortgage or other banking product, but the right to make deferred payments pursuant to the terms of her existing credit plan. Even more dispositively, the statutory definition of "applicant" expressly includes one who requests credit under an "existing credit plan" – like Piotter's LOC. *See* 15 U.S.C. § 1691a(b).

Rather than "looking to the statutory scheme as a whole and placing the particular provision within the context of that statute," *United States v. Epskamp*, 832 F.3d 154, 162 (2016), the Bank does not even analyze the statutory definition of "applicant." It argues that Piotter cannot be considered an applicant because she requested credit under her existing credit plan after it was already established. *See* Mem. of Law at 4-5 (Doc. No. 25-4). Put differently, the Bank claims that the ECOA only protected Piotter when she first requested to establish the credit plan. But any subsequent requests for credit pursuant to this existing credit arrangement fall outside ECOA protection. This strained interpretation presents fundamental flaws.

The Bank reads into the statutory definition a limitation that contradicts the text itself. Neither does their construction function sensibly alongside other provisions of ECOA. The ECOA prohibits discrimination against any applicant "with respect to any aspect of a credit transaction." 15 U.S.C. § 1691(a). The Bank's preferred interpretation would prohibit discrimination only when forming a credit plan, and allow discrimination for any later credit requests under that existing credit plan. This perspective introduces a loophole big enough to

swallow the statute's central prohibition on credit discrimination for "existing credit plans," expressly included in the definition of "applicant." *See* 15 U.S.C. § 1691a(b); *cf. Tyson v. Sterling Rental, Inc*., 836 F.3d 571, 580 (6th Cir. 2016) (rejecting interpretation of ECOA that would make it so easy to evade as to render it "a paper tiger"). Nor can the Bank square its narrow interpretation of "applicant" with the ECOA's requirement that all "applicants" must receive a written explanation when the terms of an "existing credit arrangement" are modified. *See* 15 U.S.C. § 1691(d)(2), (6).

Here, Piotter directly applied for credit by requesting to borrow money pursuant to her existing credit plan. First Am. Compl. ¶¶ 27, 37-38. In other words, Piotter sought to defer repayment of the amount she requested to borrow pursuant to the terms of her existing credit plan. Such allegations unambiguously make her an "applicant" under ECOA's statutory definition. *See* 15 U.S.C. § 1691a(b); *see also Johnson v. James B. Nutter & Company*, 438 F.Supp.3d 697, 709 (S.D.W.Va. 2020) (the plaintiff was an "applicant" because her "request to participate in the [] program was a request to defer repayment of the reverse mortgage").

The ECOA's protections against credit discrimination do not disappear the moment an existing credit plan is conceived. The Bank's interpretation of "applicant" should not be adopted.

### 4.  Piotter is unambiguously an "applicant" under the reasoning of *TeWinkle*.

The Bank primarily relies on *Tewinkle* for its argument that Piotter cannot be an "applicant" because she requested to borrow money from an existing credit plan. 2019 WL 8918731, at *3. But the facts as alleged in *TeWinkle* are not present here. The plaintiff in *TeWInkle* never alleged that he requested to borrow money from an existing credit plan. Rather that plaintiff asserted he was an "applicant" because he "wish[ed] to retain his [] account" after the defendant closed his "checking account and its overdraft line of credit and debit card

account." *Id.* at *2, *4. The *Tewinkle* Court explained that because there was no link between any active conduct of the plaintiff with the closure of his account, he was not an applicant under the ECOA. *Id.* at *4. The court reasoned that the "plaintiff would have been an applicant if he sought reconsideration or applied for renewal of the line of credit." *Id.*

The other decisions the Bank cites in support of its Motion are similarly inapposite. Unlike Piotter, these plaintiffs never sought ECOA protection because their discrete requests for credit were denied. *See Kalisz v. Bank of Am., N.A.*, 2018 WL 4356768, at *1 (E.D. Va. Sept. 11, 2018) (the plaintiff alleged that the creditor refused to allow her "to make monthly payments on a loan"); *Stefanowicz v. SunTrust Mortg.*, 2017 WL 1103183, at *8 (M.D. Pa. Jan. 9, 2017) (the "discrimination alleged occurred during the servicing of her existing loan"); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 287, 291 (N.D.N.Y. 2008), *aff'd on other grounds*, 421 F. App'x 97 (2d Cir. 2011) (the plaintiff alleged that the creditor "engaged in discriminatory conduct by manipulating and misrepresenting escrow payment information, causing her to default on her mortgage").

Piotter even falls under the *TeWinkle* Court's own understanding of "applicant." After analyzing the statutory definition of "applicant," the court reasoned that: "Extension, renewal, or continuation of credit under § 1691a would appear to include customers with *existing accounts*." 2019 WL 8918731, at *4 (emphasis added). The court also contrasted the inaction of the plaintiff, who wished to keep his line of credit open but took no action to do so before initiating suit, with an applicant under the ECOA who:

> seek[s] credit (a new request, an *extension* of *existing* or additional *credit* or resisting termination of credit).

*Id.* at *5 (emphasis added).

Piotter actively sought credit in the form of an extension of existing credit. She requested that the Bank grant her the right to defer repayment on a newly-requested amount under the terms of her existing credit plan. By directly applying for credit, Piotter is plainly an "applicant" under 15 U.S.C. § 1691a(b). The Bank's Motion to Dismiss should be denied.

### B.  Regulation B Removes Any Doubt That Piotter is an "Applicant."

Piotter is unambiguously an applicant under the statutory definition, as shown above. But any uncertainty about ECOA's protection for credit requests pursuant to existing credit arrangements is dispelled by its regulations, commonly known as Regulation B. The ECOA's regulations directly and definitively conclude that Piotter's allegations make her an applicant.

"When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Florez v. Holder*, 779 F.3d 207, 210 (2d Cir. 2015) (*citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 842 (1984)). First, the court asks "whether Congress has directly spoken to the precise question at issue – that is, whether the statute is unambiguous." *Id.* As always, "[i]f the intent of Congress is clear, that is the end of the matter." *Id*. But "if the statute is silent or ambiguous," the second question for the court is limited to "whether the agency's answer is based on a permissible construction of the statute." *Id*.

### 1.  Regulation B expressly defines "applicant" to include those who have received credit.

Under the ECOA Congress granted the Bureau of Consumer Financial Protection power to "prescribe regulations to carry out the purposes of [the Act]." 15 U.S.C. § 1691b(a). Such regulations have been issued, known as Regulation B. *See* 12 C.F.R. § 1002 *et seq.*

The regulatory definition of an "applicant" broadly includes "any person who requests or who has received an extension of credit from a creditor." *See* 12 C.F.R. § 1002.2(e). Other

provisions reflect the same interpretation. *See, e.g.*, 12 C.F.R. § 1002.2(m) (defining "credit transaction" to mean "every aspect of *an applicant's* dealings with a creditor regarding an application for credit or an *existing extension of credit…*") (emphasis added).

The regulatory definition of "applicant" includes those who have both applied for *and* received credit. Piotter alleges both: that she requested extensions of credit from the Bank in March 2021, *see* First Am. Compl. ¶¶ 27, 37-38, and had previously received extensions of credit from the Bank pursuant to the terms of her existing credit plan. *Id.* ¶¶ 11-12, 35.

There is no question that Piotter is an applicant under Regulation B. It is equally clear that she can rely on this regulatory definition in pursuing her claim because the ECOA expressly incorporates the requirements imposed by Regulation B into the statute. *See* 15 U.S.C. § 1691a(g) ("Any reference to any requirement imposed under [the ECOA] or any provision thereof includes reference to" the implementing rule and its provisions). Thus, the ECOA provides a private right of action for violations of the Act or of Regulation B. *See* 15 U.S.C. §§ 1691a(g), 1691e(a) (providing for civil liability against a creditor that fails to comply "with any requirement imposed under this subchapter"); *see also RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 386 (6th Cir. 2014) ("A creditor who violates Regulation B necessarily violates ECOA itself.").

### 2. Regulation B is a reasonable implementation of ECOA and as such is entitled to deference.

The accurate interpretation of the ECOA is that the term "applicant" includes those who request credit pursuant to an existing credit plan. It is thus reasonable to reinforce that interpretation in Regulation B.

Adopting the contrary reading of "applicant" urged by the Bank would lead to the serious textual inconsistencies described above and run directly contrary to the ECOA's purposes.

Regulation B's definition avoids those difficulties. And because the Bank's strain inconsistent interpretation would open a glaring loophole in ECOA, Regulation B's definition is "necessary or proper … to prevent circumvention or evasion" of the Act. *See* 15 U.S.C. § 1691b(a). Thus, even if it is disagreed that the definition of "applicant" advanced by Piotter, and reflected in Regulation B, is the best way to read ECOA itself, it should be concluded that the regulatory definition constitutes, at minimum, a reasonable and permissible exercise of the Bureau's broad authority to issue rules to implement the Act. As such, the regulatory definition of "applicant" includes Piotter and controls the outcome here. The Bank's Motion to Dismiss should be denied.

## II.   IF PIOTTER IS NOT AN APPLICANT UNDER THE ECOA, HER STATE LAW CLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE

### A.  N.Y. Exec. Law § 296's Prohibition on Credit Discrimination Does Not Require that Piotter be Deemed an "Applicant."

N.Y. Exec. Law § 296–a(1)(b) prohibits a creditor from discriminating "in the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit" on the basis of a protected class. The state statutory prohibition on credit discrimination includes no explicit requirement that the plaintiff be an "applicant." *See id.*

If Piotter's ECOA claims are dismissed, her state law claims should be dismissed without prejudice to allow her to refile them in state court. *See Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988).

## CONCLUSION

The statutory definition of "applicant" plainly includes those who request credit under an "existing credit plan." Piotter's credit requests pursuant to her existing credit plan unambiguously render her an applicant under the ECOA. The decision on which the Bank wholly rests its Motion also explains why Piotter is an applicant, unlike someone who does not

actively "seek credit." To the extent the ECOA does not precisely answer whether Piotter falls under its definition of applicant, the regulatory definition does. Piotter's allegations even meet the Bank's own test that, "the plaintiff must have applied for a new extension of credit." *See* Mem. of Law at 8. Indeed, Piotter seeks ECOA protection because the Bank denied her new requests for credit under the terms of her existing credit plan.

Plaintiff Lori Diaz Piotter respectfully requests that the Court deny the Bank's Motion to Dismiss. In the alternative, Plaintiff's state law claims should be dismissed without prejudice.

**DICKINSON & SILVERMAN, PLLC**
*Attorneys for Plaintiff Lori Diaz Piotter*

Date:   April 1, 2022          By:   */s/ Gregory L. Silverman*
Gregory L. Silverman
118 Genesee St.
Geneva, NY  14456
Tel: 585-648-0246
gsilverman@dickinsonsilverman.com